IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

KARIN JACOBS, et al.,            §
                                 §
                Plaintiffs,      §
                                 § Civil Action No. 3:04-CV-1968-D
VS.                              §
                                 §
WILLIAM K. TAPSCOTT, JR.,        §
et al.,                          §
                                 §
                Defendants.      §

MEMORANDUM OPINION
AND ORDER

In this action for negligence and related claims arising from
a lawyer and his law firm's representation of plaintiffs in state-
court asbestos litigation, defendants move for summary judgment and
to strike the supplemental opinions of two expert witnesses whom
plaintiffs have designated.  For the reasons that follow, the court
grants the summary judgment motion except as to two grounds of
plaintiffs' breach of fiduciary duty claim and their fee forfeiture
claim, and it denies the motion to strike.

I

Plaintiffs Karin Jacobs ("Karin"), Patria Jacobs ("Patria"),
and JoeAnn Frost ("JoeAnn") sue defendants William K. Tapscott,
Jr., Esquire ("Tapscott"), and Baron & Budd, P.C. ("Baron & Budd")
based on their representation of plaintiffs in asbestos-related
litigation arising from the death of Carl Bernard Jacobs ("Carl").[1]

_____

[1]The court recounts the evidence in a light favorable to
plaintiffs, as the summary judgment nonmovants, and draws all
reasonable inferences in their favor. *E.g., U.S. Bank Nat'l Ass'n*

Karin is Carl's widow, and Patria and JoeAnn are his daughters. Carl was employed in shipyards that exposed him to asbestos products for most of his adulthood, and he was ultimately diagnosed with mesothelioma. Before he died, Carl consulted an attorney in New Orleans, Scott Bickford, Esquire ("Bickford"). Bickford's law firm, Martzell & Bickford, accepted his case on a one-third contingency fee employment agreement if the case settled before trial. Bickford later referred the case to Baron & Budd, a firm that is nationally recognized for handling asbestos litigation. Baron & Budd accepted the case based on 40% contingency fee arrangements, evidenced by three employment agreements and powers of attorney signed by Karin, Patria, and JoeAnn.

Defendants filed suit on behalf of plaintiffs and Carl's estate in state courts in Galveston (the "*Jacobs* Litigation") and Dallas counties against numerous asbestos defendants ("Asbestos Defendants"). Before the June 1999 trial setting of the *Jacobs* Litigation, defendants negotiated settlements with several Asbestos Defendants and advised Karin, Patria, and JoeAnn that they had reached cash settlements with all Asbestos Defendants for total payments of $2.4 to $2.5 million and perhaps more.

Plaintiffs became dissatisfied with defendants' representation of them. In sum, they complain that the settlement was not for an

---

*v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.) (citing *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000)).

amount that they had agreed to accept when they retained Baron & Budd, and their case was worth substantially more than what they received in settlement; they were not informed of important details of the settlement, including that it would not be paid entirely in cash, that a settlement had not been reached with Pittsburgh Corning Corporation ("Pittsburgh Corning"), that certain defendants, such as Fibreboard Corporation ("Fibreboard"), were in poor financial condition or bankrupt, that of the $200,000 that Johns-Manville Trust ("Johns-Manville") had agreed to pay to settle, only $20,000 was payable immediately in cash, with virtually no possibility of recovering the $180,000 balance; that defendants did not obtain from the Asbestos Defendants written confirmation or evidence of the settlements and did not protect plaintiffs from the consequences of post-settlement bankruptcy; and that defendants had renegotiated the settlement with Rapid American Corporation ("Rapid American"), reducing the payment from $125,000 to $52,015.00.

Karin, Patria, and JoeAnn sue Tapscott and Baron & Budd on theories of negligence, misrepresentation, breach of fiduciary duty, breach of contract, fee forfeiture, and gross negligence. They seek to recover actual damages, punitive or exemplary damages, attorney's fees, an accounting, fee forfeiture, and pre- and post-judgment interest.  Tapscott and Baron & Budd move for summary

- 3 -

judgment as to all of plaintiffs' claims.[2]  They also move to strike plaintiffs' designation of supplemental opinions for two expert witnesses.

## II

Because defendants will not have the burden of proof as to plaintiffs' claims at trial, they can obtain summary judgment by pointing the court to the absence of evidence to support an essential element of each claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once they do so, plaintiffs must go beyond their pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). Summary judgment is mandatory if plaintiffs fail to meet this burden. *Little*, 37 F.3d at 1076.  An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving parties. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Plaintiffs' failure to produce proof as to any

---

[2]Defendants also move for leave to file an appendix in support of their summary judgment reply brief. *See Dethrow v. Parkland Health Hosp. Sys.*, 204 F.R.D. 102, 104 (N.D. Tex. 2001) (Fitzwater, J.) (holding that party may not file summary judgment reply appendix without first obtaining leave of court).  The court denies the motion as moot because, even considering the contents of the reply appendix, the court would reach the same result as it does today.

Plaintiffs object to portions of defendants' summary judgment evidence. *See* Ps. Br. 23.  Because the court has not relied on any of the evidence to which plaintiffs object, it overrules the objections as moot.

essential element renders all other facts immaterial. *Edgar v. Gen. Elec. Co.*, 2002 WL 318331, at *4 (N.D. Tex. Feb. 27, 2002) (Fitzwater, J.) (citing *Celotex Corp.*, 477 U.S. at 323).

### III

Defendants move on several grounds for summary judgment dismissing plaintiffs' negligence claim. The court need only consider, however, their contention that plaintiffs cannot prove that defendants' negligence damaged them.

Under Texas law, "[t]he elements of a negligence cause of action are the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach." *IHS Cedars Treatment Ctr. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004). There are similar requirements for a claim for legal malpractice. "To recover on a claim for legal malpractice, a plaintiff must prove that the attorney (1) owed the plaintiff a duty; (2) the attorney breached that duty; (3) the breach proximately caused plaintiff's injuries; and (4) the plaintiff was damaged." *Williams v. Briscoe*, 137 S.W.3d 120, 124 (Tex. App. 2004, no writ) (citing *Greathouse v. McConnell*, 982 S.W.2d 165, 172 (Tex. App. 1998, pet. denied). Moreover,

> [w]hen a legal malpractice claim arises from earlier litigation, the plaintiff also bears the burden to prove he would have prevailed on the underlying cause of action. In addition, a plaintiff must prove the amount of damages he would have recovered and collected in the underlying case if it had been properly prosecuted. Evidence that damages could have

> been collected is required because, even if an
> attorney's negligence prevented the entry of a
> judgment in the client's favor, the client
> suffered no damage unless he could have
> collected some part of that judgment.  This
> aspect of plaintiff's burden is commonly
> referred to as the "suit within a suit"
> requirement.  Thus, to prove that [defendant]
> committed legal malpractice, appellants had to
> prove that she failed to bring a medical
> negligence claim against the dialysis clinic,
> that the medical negligence claim would have
> been successful, that it would have resulted
> in damages, and that those damages would have
> been collectible.

*Id.* (citations omitted).

At various points in their brief, defendants point to plaintiffs' inability to prove that defendants' negligence caused plaintiffs to suffer damages.  *See* Ds. Br. 9 (no evidence that plaintiffs could have collected more through trial or settlement from solvent defendants, and, without such evidence, they cannot show essential element of injury), 10 (no evidence that any solvent defendant would have agreed to settle for more than it did and that it had financial ability to fund greater settlement, or that judgment could be collected from solvent defendant who would not agree to greater settlement); 12 (no evidence of how much of balances owed by Johns-Manville, Pittsburgh Corning, and Fibreboard would not be collected from their bankruptcies); 14 (no evidence of how much of Pittsburgh Corning settlement they will not receive). In response, plaintiffs maintain that there are genuine issues of material fact that preclude summary judgment, but they do not

specifically address the issue of damages.  Instead, they merely list these three alleged acts or omissions that they contend are breaches of duty: failing to settle with and to obtain a Tex. R. Civ. P. 11 agreement from Pittsburgh Corning in June 1999; not attempting to enforce Rule 11 agreements obtained from Rapid American and Pittsburgh Corning; and releasing Pittsburgh Corning without its first having paid the agreed consideration.  *See* Ps. Br. 22.  As defendants point out in their reply brief, plaintiffs have not responded to defendants' argument that their negligence claim fails as a matter of law absent evidence that they were injured by defendants' acts or omissions.  *See* Ds. Reply Br. 13. In fact, it appears from plaintiffs' brief that to recover from defendants in this suit, they rely primarily on allegations of breach of fiduciary duty, a claim to which the court turns below. Because plaintiffs have failed to adduce evidence that would permit a reasonable trier of fact to find that defendants' alleged negligence damaged them, and because this failure renders all other fact issues immaterial, the court grants summary judgment dismissing plaintiffs' negligence claim.

IV

The court next considers plaintiffs' misrepresentation claim. Defendants move for summary judgment on several grounds, including that plaintiffs cannot prove the essential element of injury.

Under Texas law, to prove fraud, plaintiffs must establish

that defendants

> (1) made a material representation, (2) that
> was false when made, (3) [they] knew the
> representation was false, or made it
> recklessly without knowledge of its truth and
> as a positive assertion, (4) [they] made the
> representation with the intent that
> [plaintiffs] should act upon it, and (5)
> [plaintiffs] acted in reliance upon it and
> suffered injury as a result.

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313

F.3d 305, 322 (5th Cir. 2002) (Fitzwater, J.) (citing *Beijing*

*Metals & Minerals Imp./Exp. Corp. v. Am. Bus. Ctr. Inc.*, 993 F.2d

1178, 1185 (5th Cir. 1993) (applying Texas law)).  Defendants have

pointed to the absence of evidence that plaintiffs suffered an

injury.  *See* Ds. Br. 15.  In response to defendants' motion,

plaintiffs address one of defendants' contentions, and they deny

that their misrepresentation claim is simply a fractured or split

negligence or legal malpractice claim.  *See* Ps. Br. 11-12.  They do

not, however, attempt to demonstrate that they were injured by an

alleged misrepresentation.  Section VI of their brief mentions the

misrepresentation claim in its caption, but the body of the brief

does not discuss it, focusing instead on breach of fiduciary duty.

*See id.* at 14-21.  Defendants note in reply that plaintiffs have

not responded to their arguments.  *See* Ds. Reply Br. 4-5 (noting,

*inter alia*, that although misrepresentation claim is mentioned in

title, no argument is presented).  Absent evidence that would

enable a reasonable trier of fact to find that defendants' alleged

- 8 -

misrepresentations injured plaintiffs, defendants are entitled to summary judgment dismissing this claim.

V

Defendants seek summary judgment dismissing plaintiffs' breach of contract claim on several grounds.  The court need only address their contention that the claim is impermissibly fractured, i.e., that it is essentially a claim for attorney negligence and legal malpractice.  Plaintiffs do not directly respond to this argument except to posit the conclusory assertion that this and other claims are not fractured.  But the grounds on which they rely in their second amended complaint to establish breach of contract belie this assertion.[3]

"[U]nder Texas law, a plaintiff cannot fracture a legal malpractice claim into multiple causes of action." *Archer v. Med. Protective Co.*, 197 S.W.3d 422, 427 (Tex. App. 2006, no writ h.) (citing *Aiken v. Hancock,* 115 S.W.3d 26, 28 (Tex. App. 2003, pet. denied)).  Generally, Texas courts "frown on attempts to fracture one cause of action into three or four." *Ross v. Arkwright Mut. Ins. Co.*, 892 S.W.2d 119, 133-34 (Tex. App. 1994, no writ) (citing

---

[3]Plaintiffs are limited to the grounds asserted in their second amended complaint.  They are not permitted to rely on a ground of which defendants had no notice and thus could not have fairly addressed in their motion. *E.g., N. States Power Co. v. Fed. Transit Admin.*, 358 F.3d 1050, 1057 (8th Cir. 2004) (stating that "while we recognize that the pleading requirements under the Federal Rules are relatively permissive, they do not entitle parties to manufacture claims, which were not pled, late into the litigation for the purpose of avoiding summary judgment.").

*Sledge v. Alsup*, 759 S.W.2d 1, 2 (Tex. App. 1988, no writ)).  "If a lawyer's error or mistake is actionable, it should give rise to a cause of action for legal malpractice with one set of issues which inquire if the conduct or omission occurred, if that conduct or omission was malpractice and if so, subsequent issues on causation and damages."  *Sledge*, 759 S.W.2d at 2.  "If the gist of a client's complaint is that the attorney did not exercise that degree of care, skill, or diligence as attorneys of ordinary skill and knowledge commonly possess, then that complaint should be pursued as a negligence claim, rather than some other claim."  *Deutsch v. Hoover, Bax & Slovacek*, 97 S.W.3d 179, 189 (Tex. App. 2002, no pet.) (citing *Goffney v. Rabson*, 56 S.W.3d 186, 190-94 (Tex. App. 2001, pet. denied)).  "The rule against dividing or fracturing a negligence claim prevents legal-malpractice plaintiffs from opportunistically transforming a claim that sounds only in negligence into other claims."  *Id.*

Plaintiffs' breach of contract action is based on the following alleged acts or omissions: defendants failed to inform or to keep plaintiffs reasonably informed about the *Jacobs* Litigation, and they made false and untrue statements concerning the settlement to which they had agreed, thus preventing plaintiffs from making an informed decision about whether to settle the case on the terms and for the amounts negotiated, 2d Am. Compl. ¶ 85; defendants failed to inform plaintiffs that, once they executed separate contingent

fee agreements, defendants would not communicate with them about settlements or settlement negotiations until after they legally committed them to settle, despite plaintiffs' written requests that they be informed before executing any such documents on their behalf, *id.*; defendants failed to evaluate the *Jacobs* Litigation properly and intentionally undervalued it, *id.*; before settlement negotiations were conducted and completed, defendants failed to secure written confirmation from and executed by each plaintiff clearly setting forth the amount of authority granted by each, *id.*; defendants misrepresented or omitted material facts that prevented plaintiffs from making an informed decision whether to settle on the terms defendants negotiated, to go to trial, or to release non-settling defendants, *id.* at ¶ 86; defendants failed to obtain a writing that would legally bind each settling Asbestos Defendant in the *Jacobs* Litigation and that could be judicially enforced against any settling Asbestos Defendant who failed to settle, *id.* at ¶ 87; and defendants failed to enforce written settlement agreements that were not funded, *id.*  An attorney's alleged failure to keep his client informed about the lawsuit in which he is representing the client, false statements concerning settlement that prevent a client from making an informed decision about settlement, failure to inform a client that the attorney will not communicate about settlement until after the client is legally committed to settle, failure to properly evaluate a lawsuit, failure before settlement

negotiations are conducted and completed to secure written
confirmation from the client that clearly sets forth the amount of
authority granted the attorney, misrepresentation or omission of
material facts that prevent a client from making an informed
decision whether to settle, try the case, or release non-settling
defendants, failure to obtain a writing that would legally bind and
be enforceable against a settling defendant, and failure to enforce
an unfunded settlement agreement all relate to his failure to
exercise the degree of care, skill, or diligence that attorneys of
ordinary skill and knowledge commonly possess rather than to his
failure to perform his contract with the client.[4]

Accordingly, the court holds that defendants are entitled to
summary judgment dismissing plaintiffs' breach of contract action
because it is a fractured claim.

VI

Defendants move for summary judgment dismissing plaintiffs'
breach of fiduciary duty claim, contending that it is fractured
because plaintiffs rely on the same acts and omissions to support
this cause of action as are alleged to establish negligence.  In
reply to plaintiffs' arguments——in which they maintain that their

_____

[4]The court does not suggest that plaintiffs' assertions would
be deemed improperly fractured negligence claims if made, for
example, to support a fraud claim.  But it is one thing to say that
a lawyer committed fraud rather than malpractice by making a false
statement to a client about a settlement; it is quite another to
say that the lawyer breached his contract, rather than committed
malpractice, by doing so.

- 12 -

claim is not fractured and assert 13 grounds for proving breach of
fiduciary——defendants posit that plaintiffs are fracturing a legal
malpractice claim, that some of plaintiffs' grounds are not pleaded
in their second amended complaint, and that plaintiffs cannot
recover on the remaining grounds as a matter of law.

A

The court has summarized above the Texas law of claim
fracturing as it applies to claims for negligence asserting legal
malpractice. *See supra* § V.  A claim for negligence, instead of
some other claim, should be asserted if the gravamen of the
client's complaint is that the attorney did not exercise the degree
of care, skill, or diligence that attorneys of ordinary skill and
knowledge commonly possess. *See Deutsch*, 97 S.W.3d at 189.  "If,
however, the client's complaint is more appropriately classified as
another claim, for example, . . . breach of fiduciary duty, . . .
then the client can assert a claim other than negligence." *Id.*

In response to defendants' motion, plaintiffs identify 13
grounds for their breach of fiduciary duty claim: (1) improperly
using and exercising the powers of attorney in the employment
agreements with plaintiffs; (2) failing to recognize that a
conflict of interest existed or may have existed between JoeAnn, on
the one hand, and Karin and Patria on the other, continuing their
representation, and not recommending separate counsel; (3) not
confirming and making certain that all parties agreed to the amount

of authority to settle; (4) failing to contact plaintiffs and obtain their prior approval and consent to dismiss any parties in the *Jacobs* Litigation; (5) submitting a claim on behalf of Karin only with Johns-Manville, without informing plaintiffs and securing Karin's signature on the claim, resulting in a $20,000 payment to Baron & Budd that was not disclosed to plaintiffs;(6) failing to inform plaintiffs before settling with Johns-Manville that $180,000 of the $200,000 settlement was a worthless note that would never be collected; (7) deliberately lying to plaintiffs and informing them that the entire *Jacobs* Litigation had settled and failing to inform them that Pittsburgh Corning had not settled; (8) failing to inform plaintiffs that extended terms of payment had been granted to Pittsburgh Corning; (9) failing to inform them that the Rapid American settlement was contingent upon other events and unilaterally negotiating a Rule 11 agreement; (10) failing to inform them they had entered into a fee splitting agreement with Bickford and Martzell & Bickford; (11) failing to prepare the case for trial and having a trial lawyer present for the June 1, 1999 trial setting of the *Jacobs* Litigation; (12) not timely securing Rule 11 agreement with Pittsburg Corning; and (13) entering into aggregate settlements without informing or obtaining the informed consent of plaintiffs.

The court concludes that grounds 2, 3, 4, 5, 6, 8, 9, 11, and 12 are claims for legal malpractice, not for breach of fiduciary

duty.   In ground 2, plaintiffs allege that defendants failed to recognize a possible conflict of interest among the plaintiffs and continued their representation without recommending separate counsel.   This is an assertion that defendants did not exercise the degree of care, skill, or diligence that attorneys of ordinary skill and knowledge commonly possess.[5]   The gist of grounds 3, 4, 5, 6, 8, and 9 is defendants' purported failure to keep plaintiffs adequately informed and to communicate with them regarding matters relevant to the *Jacobs* Litigation and settlement, and thus they are negligence claims.   *See Archer*, 197 S.W.3d at 427 (holding claims that attorney neglected matters, mis-evaluated case, and failed to communicate with client "can be viewed as claims involving legal malpractice").   Allegation 11 relates to defendants' purported lack of preparation for and attendance at trial.   Ground 12 refers to defendants' purported failure to timely secure a Rule 11 agreement with a settling defendant.   Both are patently claims of attorney conduct below the standard of care.

---

[5]The court recognizes that a claim for breach of fiduciary can be based on the attorney's failure to disclose *his own* conflict of interest without impermissibly fracturing a negligence claim. *See Deutsch*, 97 S.W.3d at 190-91.   Here, however, plaintiffs are asserting a conflict among themselves, not with their lawyers.

B

This leaves for consideration grounds 1, 7, 10, and 13. Ground 1 refers to defendants' purported improper use and exercise of the powers of attorney contained in the employment agreements. Plaintiffs contend that the powers of attorney did not grant defendants the right to settle the *Jacobs* litigation without consulting them. According to plaintiffs, by doing so, defendants "gained the benefit of attorney's fees improperly thereby and avoided the necessity and expense of a jury trial." Ps. Br. 17. An attorney's "pursuit of his own pecuniary interests over the interests of his client . . . can be viewed as claims involving breached fiduciary duties." *Archer*, 197 S.W.3d at 427-28 (citing *Aiken,* 115 S.W.3d at 28).[6] Thus the claim is not improperly fractured.

Ground 10—that defendants failed to inform plaintiffs that they had entered into a fee splitting agreement with Bickford and Martzell & Bickford—could arguably be deemed fractured because it

_____

[6]Ground 5 is distinguishable from this allegation. Although in ground 5 plaintiffs allege that defendants submitted a claim on Karin's behalf only with Johns-Manville, did not inform them or obtain Karin's signature, and received a $20,000 payment that they did not disclose to plaintiffs, they do not aver that defendants obtained the $20,000 payment in their self-interest as attorney's fees. In fact, plaintiffs otherwise complain that defendants secured a settlement with Johns-Manville for $200,000, of which $180,000 was a worthless note that would never be collected. In other words, the $20,000 payment is allegedly the cash portion of the Johns-Manville settlement, not an undisclosed payment of attorney's fees.

allegedly involves a mere failure to communicate.  Because the
claim alleges non-disclosure of an attorney's fee arrangement, and
since the court is deciding below that the claim is barred for
other reasons, the court will assume *arguendo* that it is not a
fractured negligence claim.

In ground 7, plaintiffs allege that defendants deliberately
lied to them and told them the entire *Jacobs* Litigation had
settled, without telling them that Pittsburgh Corning had not
settled.  "The attorney-client relationship is highly fiduciary in
nature." *Judwin Props., Inc. v. Griggs & Harrison*, 911 S.W.2d 498,
506 (Tex. App. 1995, no writ) (citing *O'Dowd v. Johnson*, 666 S.W.2d
619, 621 (Tex. App. 1984, writ ref'd n.r.e.)). "This relationship
carries the utmost good faith." *Id.* (citing *State v. Baker*, 539
S.W.2d 367, 374 (Tex. Civ. App. 1976, writ ref'd n.r.e.)).
"Attorneys owe their clients a fiduciary duty of 'most abundant
good faith,' requiring absolute perfect candor, openness, and
honesty, and the absence of any concealment or deception." *Combs
v. Gent*, 181 S.W.3d 378, 384 (Tex. App. 2005, no writ h.) (citing
*Deutsch*, 97 S.W.3d at 196).  This predicate for breach of fiduciary
duty——an alleged deliberate lie rather than a mere failure to
communicate or inform——is not improperly fractured.

In ground 13, plaintiffs contend that defendants breached
their fiduciary duty by entering into aggregate settlements without
informing plaintiffs or obtaining their informed consent.  This can

be the basis of a claim for breach of fiduciary duty.  *See Arce v. Burrow*, 958 S.W.2d 239, 245 (Tex. App. 1997), *aff'd as modified*, 997 S.W.2d 229 (Tex. 1999).  Consequently, it is not an improperly fractured negligence action.

Accordingly, the court holds that all of plaintiffs' predicates for breach of fiduciary duty are improperly fractured from a negligence claim, except grounds 1, 7, 10, and 13.

C

In their reply brief, defendants challenge grounds 1, 7, 10, and 13 on additional grounds.

1

As to ground 1, defendants reply that it is undisputed that plaintiffs were satisfied with the total amount of the settlement and were expecting to receive $1.5 million.  They also assert that plaintiffs have pointed to no evidence that they were injured by a misuse of the powers because they have failed to identify evidence that tends to prove that they could have collected more from solvent defendants had they rejected the settlement.  The court disagrees.  There is a genuine issue of material fact whether plaintiffs were satisfied with the settlement.  And "in the context of the attorney-client relationship, proof of damages is not required with a request for fee forfeiture in a breach of fiduciary duty claim."  *Spera v. Fleming, Hovencamp & Grayson, P.C.*, 25 S.W.3d 863, 873 (Tex. App. 2000, no pet.) (citing *Arce*, 958 S.W.2d

- 18 -

at 251); *Arce*, 958 S.W.2d at 244-45 ("To be entitled to the remedy of fee forfeiture, [plaintiffs] do not have to prove [defendants] caused actual damage——proof of a breach is enough.").

2

As to ground 7, defendants maintain that Tapscott announced the settlement based on advice from a person who was handling settlements with Pittsburgh Corning and confirmed the settlement, but Pittsburgh Corning's counsel backed out of the settlement. They also point to the absence of evidence that plaintiffs were harmed, because Pittsburgh Corning again agreed to settle when the case came up for trial in November 1999, an agreed judgment was executed in January 2000, and plaintiffs cannot show that a settlement reached in June 1999 would have been collected.

The court declines to consider these grounds for granting summary judgment as to ground 7. When defendants moved for summary judgment with respect to plaintiffs' breach of fiduciary duty claim, they did so only on the basis of claim fracturing.[7]  It is error to grant summary judgment on a ground not raised. *E.g., John*

---

[7]In their brief, defendants include in their concluding statement the assertion that "Plaintiffs do not allege facts to support a breach of fiduciary duty claim and are impermissibly fracturing their negligence claims." Ds. Br. 23.  But in the next sentence, they assert that "such claims should be dismissed as a matter of law because they are subsumed in Plaintiffs' negligence claims." *Id.*  Accordingly, defendants' single reference to plaintiffs failure to "allege facts to support a breach of fiduciary duty claim" did not place plaintiffs on notice that they were required to do more than show that their claim was not fractured.

*Deere Co. v. Am. Nat'l Bank, Stafford*, 809 F.2d 1190, 1192 (5th Cir. 1987).  And the court will not consider an argument raised for the first time in a reply brief.  *E.g., Senior Unsecured Creditors' Comm. of First RepublicBank Corp. v. FDIC*, 749 F. Supp. 758, 772 (N.D. Tex. 1990) (Fitzwater, J.).  Accordingly, the court declines to grant summary judgment dismissing this component of plaintiffs' breach of fiduciary duty claim.[8]

3

Defendants point out that grounds 10 and 13 are not alleged in plaintiffs' second amended complaint.  This is not an argument that defendants were obligated to raise in their motion, because plaintiffs did not rely on these predicates as bases for relief until they did so for the first time in opposing defendants' summary judgment motion.  Plaintiffs cannot avoid summary judgment, however, based on unpleaded claims.  *See supra* note 3.  The court therefore grants summary judgment dismissing grounds 10 and 13 of plaintiffs' breach of fiduciary duty claim.

Accordingly, the court grants in part and denies in part defendants' motion for summary judgment as to plaintiffs' breach of fiduciary duty claim.

---

[8]Although the court could raise this ground *sua sponte* and consider granting summary judgment after affording plaintiffs an opportunity to respond, because ground 1 of this claim remains to be tried, the court declines to do so.

VII

Plaintiffs also assert a cause of action for gross negligence. Defendants contend that plaintiffs cannot establish this claim. *See* Ds. Br. 25. Under Texas law, gross negligence is defined as an act or omission

> (A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

Tex. Civ. Prac. & Rem. Code Ann. § 41.001(11) (Vernon Supp. 2006).

Plaintiffs have not responded to defendants' argument. Section VI of their brief mentions gross negligence in its caption, but the body of the brief does not discuss it, focusing instead on breach of fiduciary duty. *See* Ps. Br. 14-21. Defendants note in reply that plaintiffs have not responded. *See* Ds. Reply Br. 4-5 (noting, *inter alia*, that although gross negligence is mentioned in title, no argument is presented). Absent evidence that would enable a reasonable trier of fact to find that defendants committed acts or omissions that qualify as grossly negligent under § 41.001(11), defendants are entitled to summary judgment dismissing this claim.

VIII

Plaintiffs also seek an accounting and allege a claim for fee forfeiture.  As with other claims addressed above, defendants have pointed to the absence of evidence to support these actions, *see* Ds. Br. 26-27, plaintiffs have mentioned them in the caption to Section VI of their brief, *see* Ps. Br. 14, but the body of the brief does not discuss accounting or fee forfeiture, focusing instead on breach of fiduciary duty, *see id.* at 14-21.  Defendants note in reply that plaintiffs have not responded to their arguments.  *See* Ds. Reply Br. 4-5 (noting, *inter alia*, that although accounting and fee forfeiture are mentioned in title, no arguments are presented).  The court concludes that they are entitled to summary judgment as to plaintiffs' request for an accounting in the absence of evidence that would permit a reasonable trier of fact to find in plaintiffs' favor on these claims.

Because the court has in part denied summary judgment as to plaintiffs' breach of fiduciary duty claim and has concluded that the remedy of fee forfeiture is available even without a showing of actual damages, the court denies the motion to that extent.

IX

Defendants move for summary judgment dismissing plaintiffs' claim for attorney's fees on the ground that fees are unavailable other than for breach of contract, and that this basis should be

- 22 -

eliminated through summary judgment.  Plaintiffs respond with the
conclusory assertion that they can recover attorney's fees for
breach of contract or as an element of exemplary damages.
Defendants reply that the breach of contract claim should be
dismissed, that the only basis for punitive damages is plaintiffs'
claim for gross negligence, and that attorney's fees cannot be
recovered as an element of punitive damages under Tex. Civ. Prac.
& Rem. Code Ann. § 41.001 *et seq.*

Because the court has granted summary judgment dismissing
plaintiffs' claim for breach of contract, that action cannot serve
as the basis to recover attorney's fees.  Moreover, under Texas
law, the factors to be considered in awarding exemplary damages are
prescribed by statute.  *See* Tex. Civ. Prac. & Rem. Code Ann.
§ 41.011 (a) (Vernon 1997).  Assuming *arguendo* that plaintiffs can
recover exemplary damages,[9] they have cited no authority that holds

---

[9]Before § 41.003 was amended effective September 1, 2003,
Texas courts had held that, because breach of a fiduciary duty was
a tort, exemplary damages were recoverable for such a breach.  *See*
*Hawthorne v. Guenther*, 917 S.W.2d 924, 936 (Tex. App. 1996, writ
denied) (citing *Murphy v. Canion*, 797 S.W.2d 944, 949 (Tex. App.
1990, no writ)).  With exceptions not pertinent here, under the
version of Tex. Civ. Prac. & Rem. Code Ann. § 41.003 (Vernon Supp.
2006) that controls suits filed on or after its effective date,
exemplary damages can be awarded only if the claimant proves by
clear and convincing evidence that the harm for which the claimant
seeks exemplary damages resulted from fraud, malice, or gross
negligence.  Even before 2003, however, Texas courts had held that
"participation in a breach of fiduciary duty can be the basis of an
award of exemplary damages where the jury finds the defendant acted
with fraud or malice."  *Fid. Nat'l Title Ins. Co. v. Heart of Tex.
Title Co.*, 2000 WL 13037, at *8 (Tex. App. Jan. 6, 2000, pet.
denied).  The court therefore assumes *arguendo* that proof of a

- 23 -

that the trier of fact can consider their attorney's fees when awarding exemplary damages, and the court has located a Texas case that suggests that they cannot be considered under facts like those here. *See Hawkins v. Owens*, 2000 WL 1199254, at *10 (Tex. App. Aug. 24, 2000, pet. denied) (not designated for publication) (holding that consideration of attorney's fees as factor in fixing exemplary damages was improper based on facts of case because they could not be considered as factor in breach of contract case, and that joining claims in tort with contract claims did not alter fundamental rule that breach of contract could not support recovery of exemplary damages on contract claim) (citing *Grace Petroleum Corp. v. Williamson*, 906 S.W.2d 66, 69 (Tex. App. 1995, no writ)). Accordingly, the court grants summary judgment dismissing plaintiffs' claim for attorney's fees.

X

The court now considers defendants' motion to strike expert supplemental opinions.

A

After the court-ordered deadline for providing expert reports and on the eve of the June 2, 2006 discovery deadline, plaintiffs served a May 31, 2006 letter of Mark A. Hendrix, Esquire ("Hendrix") and a June 2, 2006 letter of Peter E. Ferraro, Esquire

---

fraud-based breach of fiduciary claim would enable plaintiffs to recover exemplary damages in this case.

- 24 -

("Ferraro"), experts whom plaintiffs had designated, that contained supplemental opinions.  Defendants contend these opinions address matters not contained in the original reports of the witnesses and are additional opinions rendered after Hendrix and Ferraro were deposed on April 19, 2006.  They also assert that Ferraro's supplement addresses matters that, in view of his deposition testimony, are totally irrelevant.  In particular, defendants posit that, despite Hendrix's deposition testimony that he was not expressing an opinion on the general value of mesothelioma cases or on the *Jacobs* Litigation, in his supplemental letter he opines that no one at Baron & Budd evaluated the case as low as $1 million, if such a valuation was made it was not reasonable, and a more reasonable valuation of the case would be between $2.5 and $3 million.  They cite Ferraro's deposition testimony that, although he valued the case at the low end of $3 million, there was no negligence involved in settling the case or telling plaintiffs that they had settled the case for $2.5 or $2.6 million.  And they complain that he now opines that a $1 million valuation was not reasonable and a settlement in the range of approximately $3 million was reasonable.  Defendants argue that the experts' supplemental disclosures violate Fed. R. Civ. P. 26(a)(2)(B) and (C) because they were not contained in the witnesses' expert reports, were made after the witnesses were deposed, and were not disclosed until defendants were out of time to re-depose them.

- 25 -

They move to strike the new opinions contained in the supplemental letters.

Plaintiffs respond that the experts made minor additions and supplements to their opinions, the supplementation was limited solely to the valuation of the settlement as it applied to the *Jacobs* Litigation, in the depositions of Hendrix and Ferraro the subject of valuation was discussed and testimony was offered during examination by defendants' counsel, and Ferraro's expert report contains his opinion that the settlement value had a low-end range of $3 million.   They also argue that they moved to compel defendants to produce the documents that relate to the verdicts and settlements in mesothelioma cases that are referenced on the Baron & Budd website.   And they maintain that defendants are not prejudiced by the supplementation because the attorneys have discussed re-deposing the experts if changes or additions are made to their opinions, they made allowance in their June 2, 2006 status report for conducting supplemental depositions of experts, plaintiffs do not oppose re-deposing the experts, other remaining witnesses will opine concerning the value of the *Jacobs* Litigation, and the supplemental depositions are neither irrelevant nor a surprise.

B

Although as the court explains below its assesses under the same four factors whether to strike the supplemental opinions of Ferraro and Hendrix, the reasons for applying these factors differ as to each witness.  This is because Ferraro included in his expert report an opinion regarding the settlement value of the claims in the *Jacobs* Litigation, but there is no indication in the record of, and plaintiffs do not identify, the opinion that Hendrix expressed in his original report that he purports to supplement in his letter.  The court therefore analyzes Ferraro's supplemental opinions under the supplementation standard and assesses Hendrix's opinions under the standard for undesignated experts.

1

In Ferraro's original expert report, he stated that "[i]n my opinion, the settlement value of the claims had a low end range value of $3,000,000.00."  Ps. Resp. Ex. 4 at 10, ¶ 45.[10]  His June 2, 2006 letter supplements his opinion, stating that "[a] one million dollar valuation . . . was not reasonable considering the facts of the case" and the quality, caliber, and record of success of Baron & Budd; "[t]he actual total settlement amount of the case

_____

[10]The court has cited this exhibit rather than an appendix page because plaintiffs did not submit the required evidence appendix in briefing this motion.  *See* N.D. Tex. Civ. R. 7.1(i)(1) ("A party who relies on documentary (including an affidavit, declaration, deposition, answer to interrogatory, or admission) or non-documentary evidence to support or oppose a motion must include such evidence in an appendix.").

had it been recovered was more realistic"; and "the total settlement in the range of three million dollars plus or minus was reasonable." Ds. Mot. Strike Ex. D.[11]

Rule 26(a)(2)(B) provides that the disclosure of certain expert witnesses must be accompanied by a written report that contains, *inter alia*, "a complete statement of all opinions to be expressed." Rule 26(a)(2)(C) establishes the default deadlines and sequence for making such disclosures when the court has not otherwise directed or the parties have not otherwise stipulated. Rule 26(e) addresses the duty to supplement or correct Rule 26(a) disclosures and discovery responses.

> Rule 26(e)(1) requires that, with respect to the retained expert, there is a duty to supplement the expert's opinion if there is a material change in the opinion. This obligation extends to both the report required by Rule 26(a)(2)(B), as well as the expert's deposition testimony.

*Sullivan v. Glock, Inc.*, 175 F.R.D. 497, 502 (D. Md. 1997). Ferraro's June 2, 2006 letter qualifies as a supplementation of the opinion disclosed in his initial report because supplementation includes material changes to an expert's opinion.

"This supplementation must occur not later than the date of the pretrial disclosures required by Rule 26(a)(3)." *Id.*; *see Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546,

---

[11]Defendants also failed to include their evidence in an appendix. *See supra* note 10.

570 n.43 (5th Cir. 1996) ("Rule 26(e)(1) requires that supplementation of expert disclosures be made by the time the supplementing party's 'Pretrial Disclosures' are due." (citing Rule 26(e)(1))). The court can by order impose an earlier supplementation deadline. *See, e.g., Sullivan*, 175 F.R.D. at 506 (holding in context of retained expert witnesses that "[c]ounsel must be prepared to provide full and meaningful disclosure and discovery at the times required by the . . . pretrial scheduling order."). In this case the court imposed deadlines for designating expert witnesses and a discovery deadline that it periodically modified at the parties' request. It intended that expert disclosures and supplementations be made sufficiently in advance of the court-imposed discovery deadline so that the parties could by that deadline depose opposing experts on all opinions to be expressed at trial. This intent is usually clear to parties litigating in this court and is typically followed in practice. But absent an explicit directive that required a party to supplement expert opinions before the discovery cut-off, a party could have concluded that the obligation to do so was controlled by the deadline specified by Rule 26(e)(1): i.e., the deadline for Rule 26(a)(3) pretrial disclosures. In an April 12, 2006 order, which the court entered in response to the parties' joint motion, it set July 28, 2006 as the deadline for Rule 26(a)(3) disclosures. Accordingly, under Rule 26(e)(1), the supplementation of Ferraro's

original expert report was not due until July 28, 2006.

At the time the court filed the order, July 28 was 30 days in advance of the then-existing trial setting.[12]   Courts have noted that problems can arise from application of a rule that allows supplementation of expert opinions so close to trial.  For example, in *Tucker v. OHTSU Tire & Rubber Co.*, 49 F.Supp.2d 456 (D. Md. 1999), the court observed that

> in light of the large window of time allowed by [Rule 26(a)(2)(B), Rule 26(e)(1), and a local rule] to supplement expert disclosures, the Court should not automatically permit testimony at trial as to the newly discovered information if, considering the facts of the case, it is convinced that doing so would be unfair or cause undue delay or expense.

*Id.* at 461.  The court reasoned that

> [i]n making such a determination, the Court should consider the following factors: (1) the explanation for making the supplemental disclosure at the time it is made; (2) the importance of the supplemental information to the proposed testimony of the expert, and the expert's importance to the litigation; (3) potential prejudice to an opposing party; and (4) the availability of a continuance to mitigate any prejudice.

*Id.*  As is clear from the discussion below concerning Hendrix, these four factors are identical in concept, if not in language, to the ones this court uses when it decides whether to exclude an expert who was not properly designated.  *See Cont'l Cas. Co. v. St.*

---

[12]In effect, the parties by agreement applied the 30-day default disclosure proviso of Rule 26(a)(3).

*Paul Fire & Marine Ins. Co.*, 2006 WL 2506957, at *3 (N.D. Tex. Aug. 15, 2006) (Fitzwater, J.) (quoting *Wright v. Blythe-Nelson,* 2001 WL 804529, at *2 (N.D. Tex. July 10, 2001) (Fitzwater, J.)).  The Fifth Circuit applies similar factors when it performs a Rule 37(c)(1) harmless error analysis to determine whether the district court has properly exercised its discretion in allowing expert testimony when Rule 26(a) has been violated.  *See, e.g., Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 563-64 (5th Cir. 2004) (quoting *Tex. A & M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003)).  The court concludes that it should use them to decide whether to strike plaintiffs' supplementation of Ferraro's opinion.

2

The record related to defendant's motion to strike does not disclose, and plaintiffs do not specify in their response, the opinion in Hendrix's initial report that he purported to supplement through his May 31, 2006 letter.[13]  Accordingly, his so-called supplemental opinion should be treated as an undisclosed opinion and analyzed under the factors that the court would apply in

---

[13]It can be inferred from plaintiffs' response that Hendrix offered some opinions, because they maintain that each expert witness "made minor additions and supplements by way of a letter supplementing their initial expert disclosures," and they assert that "the supplemental reports . . . is not the first time the topic has been raised or covered."  Ps. Resp. 1.  They do not, however, specify what his initial opinion was, and, unlike concerning Ferraro, they have not included a copy of Hendrix's initial expert witness report in response to defendants' motion.

deciding whether to permit the testimony of an expert who was not properly designated. "The purpose of supplementary disclosures is just that——to supplement. Such disclosures are not intended to provide an extension of the expert designation and report production deadline." *Metro Ford Truck Sales, Inc. v. Ford Motor Co.*, 145 F.3d 320, 324 (5th Cir. 1998).

> In deciding whether to exclude the testimony of an expert witness whom a party did not properly designate, the court's discretion is guided by considering the following factors: "(1) the explanation for the failure to identify the witness, (2) the importance of the testimony, (3) the potential prejudice in allowing the testimony, and (4) the availability of a continuance to cure such prejudice."

*Cont'l Cas.*, 2006 WL 2506957, at *3 (quoting *Wright,* 2001 WL 804529, at *2).

C

Because the court essentially evaluates under the same four factors whether to allow the supplemental opinions of Ferraro and Hendrix, it will address both witnesses together.

1

The court first considers plaintiffs' explanation for their failure. They do not offer an explicit explanation. Implicitly, they maintain that the supplemental letters make minor additions and changes to the witnesses' opinions.

The only minor change, however, is Ferraro's change of opinion from his original report——that the settlement value of the claims

- 32 -

had a low-end range value of $3 million——to the one in his supplemental letter——that a settlement in the range of approximately $3 million was reasonable. Otherwise, he is offering new opinions. And as already noted, Hendrix is not shown to have provided a specific relevant opinion in his original report.

2

The court next addresses the importance of the testimony. Although the opinions of Hendrix and Ferraro may have somewhat diminished importance in view of the court's summary judgment ruling, the evidence appears to be important. For example, their opinions could have probative value in establishing the validity of plaintiffs' breach of fiduciary duty claim based on the assertion that defendants' used the powers of attorney to gain the benefit of attorney's fees and to avoid the necessity and expense of a jury trial. The value of the *Jacobs* Litigation in relation to the amount of the settlement might reveal a motive to settle for less than the worth of the case, in order to enhance the certainty of obtaining attorney's fees or to eliminate the expenses of a jury trial.

3

The remaining two factors focus on prejudice: the prejudice to defendants of allowing the evidence, and the possibility of curing the prejudice through a continuance. *See MGE UPS Sys., Inc. v. Fakouri Elec. Eng'g, Inc.*, 2006 WL 680513, at *5 (N.D. Tex. Mar.

14, 2006) (Means, J.) ("However, the issue is whether the failure of the Fakouri defendants to properly designate the subject matter of Rustrum's testimony is harmful to MGE."). The burden is on plaintiffs to show that defendants will not be unduly prejudiced. *Cont'l Cas.*, 2006 WL 2506957, at *3 (citing *Wright,* 2001 WL 804529, at *5).

The court recognizes that a party can be unduly prejudiced by the timing of expert opinion disclosures, whether through supplementation or by designation of a previously undisclosed expert. *See, e.g., Sharpe v. United States*, 230 F.R.D. 452, 462 (E.D. Va. 2005) ("To permit the plaintiff additional time to amend her expert disclosures would work unjustifiable hardship upon the defendant in attempting to complete discovery and prepare for trial within the confines of the court's scheduling order." (citing *Tucker*, 49 F.Supp.2d at 460)). Granting a continuance can also cause undue prejudice to the opposing party, who itself may have fully complied with the rules and is ready for its day in court. Plaintiffs argue for five reasons that defendants will not suffer undue prejudice. In their reply, defendants do not seriously complain that they would incur undue prejudice if the court allows the supplemental opinions but also permits defendants to re-depose the witnesses. They seem to focus more on plaintiffs' failure to follow the rules, specific deficiencies in plaintiffs' reasoning, the prejudice that would be visited on them if they are *not* able to

re-depose the witnesses, and prejudice to their pending summary judgment motion.

As is apparent from the court's decision today, the testimony of these witnesses has not precluded defendants from obtaining summary judgment on a basis on which they would have otherwise prevailed.  The supplemental opinions of these experts have not at all impacted the court's summary judgment ruling.  Plaintiffs have offered to allow defendants to re-depose the witnesses.  And although it does not appear that a continuance is ineluctable, one would be available if needed to address any prejudice to defendants from the timing of the depositions.  The court assumes that if defendants believe they need to re-depose Hendrix and Ferraro to ameliorate prejudice, the depositions can be taken promptly by agreement.  Consequently, there is no showing that a continuance would unduly prejudice defendants, other than as a function of allowing the expert opinions at all.  But this fact cannot be sufficient to exclude their testimony, or courts would never allow a party to cure a failure to disclose or supplement.

Considering the four factors, the court holds that the opinions in the supplemental letters should not be stricken.

D

A primary premise of defendants' motion is that these witnesses have expressed opinions that are contrary to, or inconsistent with, those given in their depositions.  Under Rule

26(e)(1), a Rule 26(a)(2)(B)-type expert must supplement his deposition testimony if there is a material change in his opinion. *Sullivan*, 175 F.R.D. at 502.   Therefore, the court's analysis of the four factors largely applies to Ferraro's supplemental opinions given after his deposition.   It also pertains to Hendrix's opinions that were not disclosed in his deposition or in a report. Accordingly, the court's decision does not change when the opinions in the supplemental reports are compared to the witnesses' deposition testimony.   Of course, given the deposition testimony, these two witnesses are virtually certain to face trenchant cross-examination that subjects them to impeachment at trial.

*      *      *

Defendants' July 11, 2006 motion for summary judgment is granted in part and denied in part.   Their June 16, 2006 motion to strike expert supplemental opinions is denied.   Defendants' August 16, 2006 motion for leave to file supplemental appendix in support of their reply brief is denied as moot.

**SO ORDERED.**

September 25, 2006.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE