IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

KARIN JACOBS, et al.,           §
                                §
                 Plaintiffs,    §
                                § Civil Action No. 3:04-CV-1968-D
VS.                             §
                                §
WILLIAM K. TAPSCOTT, JR.,       §
et al.,                         §
                                §
                 Defendants.    §

MEMORANDUM OPINION
AND ORDER

The question presented by defendants' renewed motion for judgment as a matter of law is whether the jury could reasonably have found that defendants—an attorney and his law firm—breached their fiduciary duties to plaintiffs by deliberately lying to them and telling them that their entire asbestos lawsuit had settled, without telling them that one defendant had not settled. Concluding that it could not, the court grants the motion and dismisses this case with prejudice.

I

The court assumes the parties' familiarity with the background facts and procedural history of this case set out in the court's prior opinion granting in part and denying in part defendants' motion for summary judgment. *Jacobs v. Tapscott*, 2006 WL 2728827, at *1-*2 (N.D. Tex. Sept. 25, 2006) (Fitzwater, J.). It will therefore summarize the background facts and procedural history as necessary to understand today's decision. The court

will also discuss the pertinent evidence adduced at trial, applying the standard that governs the court's review and assessment of the trial evidence when deciding a renewed motion for judgment as a matter of law.

Plaintiffs Karin Jacobs ("Karin"), Patria Jacobs ("Patria"), and JoeAnn Frost ("JoeAnn") sued defendants William K. Tapscott, Jr. ("Tapscott"), an attorney, and Baron & Budd, P.C. ("Baron & Budd"), the law firm who employed him, based on their representation of plaintiffs in asbestos-related litigation arising from the death of Carl Bernard Jacobs ("Carl") from mesothelioma. Karin is Carl's widow, and Patria and JoeAnn are his daughters. Baron & Budd, a firm with a national reputation for handling asbestos litigation, accepted plaintiffs' case under a contingent fee arrangement. Each plaintiff signed an employment agreement and a power of attorney. *Id.* at *1. Baron & Budd filed suit on behalf of plaintiffs and Carl's estate in state court in Galveston, Texas (the "*Jacobs* Litigation") against numerous defendants ("Asbestos Defendants"). Before the June 1, 1999 trial setting of the *Jacobs* Litigation, Baron & Budd attorneys negotiated settlements with several Asbestos Defendants. Tapscott, the Case Manager for the Galveston docket, advised Karin and Patria that settlements had been reached with all the Asbestos Defendants for $2.5 million, and perhaps more.

Plaintiffs became dissatisfied with Baron & Budd's

representation.  *Id.*  They alleged that the settlement was not for an amount they had agreed to accept when they retained the firm, and that their case was worth substantially more than what they received in settlement; they were not informed of important details of the settlement, including that it would not be paid entirely in cash, a settlement had not been reached with Pittsburgh Corning Corporation ("Pittsburgh Corning"), certain defendants were in poor financial condition or bankrupt, and only a fraction of the sum that one defendant had agreed to pay was payable immediately in cash, with virtually no possibility of recovering the balance; that defendants did not obtain from the Asbestos Defendants written confirmation or evidence of the settlements and did not protect plaintiffs from the consequences of post-settlement bankruptcies; and that defendants had renegotiated the settlement with one defendant, substantially reducing the payment.  *Id.*  Plaintiffs sued Tapscott and Baron & Budd on theories of negligence, misrepresentation, breach of fiduciary duty, breach of contract, fee forfeiture, and gross negligence.  *Id.* at *2.

Tapscott and Baron & Budd moved for summary judgment.  The court granted the motion in large part, but it denied it as to two components of plaintiffs' breach of fiduciary duty claim.  It concluded that defendants were not entitled to summary judgment dismissing the claim that defendants had improperly used and exercised the powers of attorney in the employment agreements with

plaintiffs so as to improperly gain the benefit of attorney's fees and avoid the necessity and expense of a jury trial. *Id.* at *7. And, as pertinent here, the court held that defendants were not entitled to summary judgment dismissing the claim that they had breached their fiduciary duties by deliberately lying to plaintiffs and telling them that the entire *Jacobs* Litigation had settled, without telling them that Pittsburgh Corning had not settled. *Id.*

Defendants moved for summary judgment dismissing plaintiffs' breach of fiduciary duty claim on the ground that it was improperly fractured. *Id.* at *5. In response to defendants' motion, plaintiffs identified 13 grounds for their breach of fiduciary duty claim, one of which——ground 7——was that defendants breached their fiduciary duty by "deliberately lying to plaintiffs and informing them that the entire *Jacobs* Litigation had settled, without telling them that Pittsburgh Corning had not settled." *Id.* The court denied defendants' motion, concluding that this ground was not fractured.

> In ground 7, plaintiffs allege that defendants deliberately lied to them and told them the entire *Jacobs* Litigation had settled, without telling them that Pittsburgh Corning had not settled. The attorney-client relationship is highly fiduciary in nature. This relationship carries the utmost good faith. Attorneys owe their clients a fiduciary duty of most abundant good faith, requiring absolute perfect candor, openness, and honesty, and the absence of any concealment or deception. This predicate for breach of fiduciary duty——an alleged deliberate lie rather than a mere failure to

> communicate   or   inform——is   not   improperly
> fractured.

*Id.* at *6 (citations and quotation marks omitted).

The court also noted that, in their reply brief, defendants challenged this claim on additional grounds.   *Id.* at *7.   They argued, *inter alia*, that Tapscott announced the settlement based on advice from a person who handled settlements with Pittsburgh Corning and confirmed the settlement, but Pittsburgh Corning's counsel backed out of the settlement.   *Id.*   The court declined to consider this or defendants' other grounds for granting summary judgment because when they "moved for summary judgment with respect to plaintiffs' breach of fiduciary duty claim, they did so only on the basis of claim fracturing," "[i]t is error to grant summary judgment on a ground not raised," "[a]nd the court will not consider an argument raised for the first time in a reply brief."   *Id.*   In other words, the court did not reach the merits of defendants' contention that Tapscott could not have deliberately lied when he informed plaintiffs that the case had settled because, when he announced the settlement, he was doing so based on advice that Pittsburgh Corning had settled, but Pittsburgh Corning's counsel later backed out.

The parties tried these two remaining breach of fiduciary duty claims to a jury.   The jury found in favor of defendants on the claim that they had breached their fiduciary duties by improperly using the powers of attorney.   It found in plaintiffs' favor on the

claim that Tapscott deliberately lied by telling plaintiffs the entire *Jacobs* Litigation had settled, without telling them that Pittsburgh Corning had not settled.[1]

At each appropriate procedural stage during the trial, defendants moved for judgment as a matter of law.[2]   They maintained, in pertinent part, that apart from plaintiffs' conclusory statements, which were not evidence, there was no competent evidence that Tapscott deliberately lied.   Ds. Mot. J. Matter of Law 2.   Defendants asserted:

> There is not a scintilla of evidence that when Tapscott announced the settlement to Plaintiffs[,] Pittsburgh Corning had not agreed to settle or, more importantly, that Tapscott actually knew a settlement had not occurred.   The undisputed evidence is that Tapscott learned *after* he announced the settlement to Plaintiffs that Pittsburgh Corning "pulled" its offer, or reneged on the

---

[1]In their briefing and at the oral argument of this motion, defendants have treated this claim as if asserted against Tapscott alone.   The court disagrees.   Although the question the court asked of the jury in its charge was framed specifically in terms of whether Tapscott deliberately lied, this was because it was his conduct that was at issue.   The claim, however, was asserted against both defendants.   As the court notes above, "[i]n ground 7 [of their summary judgment response], plaintiffs allege[d] that *defendants* deliberately lied to them and told them the entire *Jacobs* Litigation had settled, without telling them that Pittsburgh Corning had not settled."   *Jacobs*, 2006 WL 2728827, at *6 (emphasis added).

[2]*Cf., e.g., Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 238 (5th Cir. 2001) (holding that if party fails to move for judgment as a matter of law under Fed. R. Civ. P. 50(a) on an issue at the conclusion of all the evidence, it waives both right to file renewed post-verdict Rule 50(b) motion and also right to challenge sufficiency of evidence on that issue on appeal).

settlement.

*Id.* (emphasis in original).   Defendants also argued that "there must be some evidence that Tapscott had actual knowledge that Pittsburgh Corning had not settled when he told Plaintiffs the entire case was settled."   *Id.*   The court denied the motions without prejudice.[3]

After the jury returned a verdict, the court advised counsel

---

[3]During the oral argument of this motion, defendants asserted that this case should never have gone to the jury.  Although the court's decision today confirms that this contention is correct as it relates to the claim at issue, it should be noted that the court conformed to the preferred approach in this circuit when it submitted the claim to the jury and effectively reserved its ruling.

> We remind the district court that the better practice would have been to reserve ruling on the motion for a directed verdict and let the case go to the jury.  "The primary reason we encourage district courts to reserve judgment on motions for directed verdict is that if the court grants a judgment n.o.v., a retrial is avoided if we reverse the j.n.o.v. because there is a jury verdict that can be reinstated."  *McPhillamy v. Brown & Root, Inc.,* 810 F.2d 529, 533 (5th Cir. 1987).  "At least nine other Circuits have endorsed this practice."  *Id.   See, e.g., Holmgren v. Massey-Ferguson, Inc.,* 516 F.2d 856, 859 n.2 (8th Cir. 1975) ("Once again we emphasize the wisdom and expediency of reserving a ruling on such motions [for directed verdicts] until the jury has had the opportunity to weigh the evidence.").

*Wiltz v. Mobil Oil Exploration & Producing N. Am., Inc.*, 938 F.2d 47, 50 (5th Cir. 1991) (brackets in original) (addressing motion for directed verdict, now referred to as motion for judgment as a matter of law).

that it would consider the motion on post-trial briefing and defer
entry of judgment.  *See* Fed. R. Civ. P. 50(b) ("If the court does
not grant a motion for judgment as a matter of law made under
subdivision (a), the court is considered to have submitted the
action to the jury subject to the court's later deciding the legal
questions raised by the motion.").   The parties have submitted
additional briefing, and the court has heard oral argument.

II

A motion for judgment as a matter of law "challenges the legal
sufficiency of the evidence to support the verdict."   *Hodges v.
Mack Trucks, Inc.*, 474 F.3d 188, 195 (5th Cir. 2006) (citing *Ford
v. Cimarron Ins. Co.*, 230 F.3d 828, 830 (5th Cir. 2000)).

> Judgment as a matter of law is appropriate
> with respect to an issue if there is no
> legally sufficient evidentiary basis for a
> reasonable jury to find for a party on that
> issue.  This occurs when the facts and
> inferences point so strongly and
> overwhelmingly in the movant's favor that
> reasonable jurors could not reach a contrary
> verdict.  In considering a Rule 50 motion, the
> court must review all of the evidence in the
> record, drawing all reasonable inferences in
> favor of the nonmoving party; the court may
> not make credibility determinations or weigh
> the evidence, as those are jury functions.  In
> reviewing the record as a whole, the court
> must disregard all evidence favorable to the
> moving party that the jury is not required to
> believe.  That is, the court should give
> credence to the evidence favoring the
> nonmovant as well as that evidence supporting
> the moving party that is uncontradicted and
> unimpeached, at least to the extent that that
> evidence comes from disinterested witnesses.

*Brennan's Inc. v. Dickie Brennan & Co.*, 376 F.3d 356, 362 (5th Cir. 2004) (citations, brackets, and quotation marks omitted). The "standard of review with respect to a jury verdict is especially deferential." *Lubke v. City of Arlington*, 455 F.3d 489, 494 (5th Cir. 2006) (quoting *Brown v. Bryan County, Okla.*, 219 F.3d 450, 456 (5th Cir. 2000)). "A jury verdict must stand unless there is a lack of substantial evidence, in the light most favorable to the successful party, to support the verdict." *Am. Home Assurance Co. v. United Space Alliance, LLC*, 378 F.3d 482, 487 (5th Cir. 2004) (citing *Liberty Mut. Ins. Co. v. Falgoust*, 386 F.2d 248, 253 (5th Cir. 1967)).

### III

At the post-verdict stage, plaintiffs' remaining claim is based on the following two premises: First, Tapscott deliberately lied to them and told them the entire *Jacobs* Litigation had settled, without telling them that Pittsburgh Corning had not settled. Second, Tapscott deliberately lied to plaintiffs by telling them the entire case had settled and then concealing from them the fact that the Pittsburgh Corning settlement had been pulled, or failing to correct what he may have believed to be a truthful statement when he told plaintiffs that the entire case had settled. For reasons the court will explain, the evidence is legally insufficient to support the first ground, and the second exceeds the scope of the claim that survived summary judgment.

- 9 -

A

The following recitation of the evidence is based on the court's review of all of the evidence in the record. The court has drawn all reasonable inferences in plaintiffs' favor, has not made credibility determinations, and has not weighed the evidence. In reviewing the record as a whole, the court has disregarded all evidence favorable to defendants that the jury was not required to believe. It has given credence to the evidence that favors plaintiffs and that supports defendants and is uncontradicted and unimpeached.[4]

Baron & Budd is a law firm that, at the time of the *Jacobs* Litigation, had developed a reputation for competence in representing individuals who had been exposed to and injured by asbestos products and had developed diseases like mesothelioma. Tr. 4:5-6.[5] It allocated responsibilities for litigating asbestos

---

[4]For example, during closing argument, plaintiffs' counsel repeatedly acknowledged the credibility and reliability of the testimony of Christina Mancuso ("Mancuso"), a Baron & Budd attorney. *See, e.g.,* Tr. 4:66 (applauding Mancuso for testifying that she told Tapscott the case had not settled); 4:68 (asserting that Mancuso had no reason to lie during her testimony); 4:71 (relying on Mancuso's testimony regarding what everyone who should have known about the Pittsburgh Corning settlement did know); 4:75 (asserting that Mancuso was credible and believable when she testified that she told Tapscott on June 2, 1999 that the case had not settled) & 4:76 (relying on the direct evidence of what Mancuso said). Except as noted, *see infra* at note 6, the court has generally treated her testimony that supports defendants as uncontradicted and unimpeached.

[5]Citations to "Tr." are to the volume and page of the trial transcript.

cases among several lawyers with varying duties. *Id.* at 3:192-93 & 4:8-10. Tapscott was the Case Manager for suits pending in Galveston County, Texas, and therefore was the Case Manager for the *Jacobs* Litigation. *Id.* at 2:129. As Case Manager, Tapscott was responsible for the case and for communicating with the clients. *Id.* at 2:139 & 2:146. Another attorney, Rick Nemeroff ("Nemeroff"), was the lawyer who would have represented plaintiffs had the case been tried. *Id.* at 2:138. Baron & Budd sued numerous Asbestos Defendants on plaintiffs' behalf, including Pittsburgh Corning. *Id.* at 2:170 & 2:171. Christina Mancuso ("Mancuso") was the Baron & Budd attorney who had responsibility for negotiating settlements with Pittsburgh Corning. *Id.* at 2:76.

Baron & Budd settled asbestos cases like the *Jacobs* Litigation using the following procedure. A lawyer such as Mancuso was assigned to one or more defendants and negotiated a settlement with a specific defendant based on authority that the client had given Baron & Budd beforehand. *Id.* at 2:86-87. The firm attorney who negotiated the settlement did not contact the client in advance for specific approval of the settlement amount being negotiated. *Id.* After a settlement was reached between the Baron & Budd attorney and the defendant's counsel, the Baron & Budd negotiating attorney relayed the information to the Case Manager, who was responsible for communicating with the client. *Id.* at 2:91. Baron & Budd then sent the client a release and a cover letter advising her that the

defendant had made a settlement offer. *Id.* at 2:95. The letter did not state that a settlement had already been reached. *Id.* at 2:97. The correspondence informed the client that she could accept or reject the settlement and could call the firm with any questions. *Id.* at 2:90. Baron & Budd did not provide clients with copies of letters it sent to defendants confirming the settlement amounts. *E.g., id.* at 2:93. If the client did not want to accept the settlement, she would inform Baron & Budd. *Id.* at 2:94. Baron & Budd would then notify the defendant and go from there. *Id.*

Baron & Budd had several clients with suits pending against Pittsburgh Corning that were set for trial in various venues on June 1, 1999. *See* Ps. Ex. ("PX") 44. The *Jacobs* Litigation was scheduled for trial on that date in Galveston. *E.g., id.* Baron & Budd classified defendants according to settlement type. Pittsburgh Corning was considered to be in the "trial" class, meaning it was a large company that fought everything and would not settle unless the case was set for trial and the parties were at the courthouse door. Tr. 2:78.

Mancuso negotiated settlements of Pittsburgh Corning cases with Cathy Mohan ("Mohan"), an attorney who represented Pittsburgh Corning. *See* PX 44. Mancuso knew that the *Jacobs* Litigation was set for trial on June 1 in Galveston. Tr. 2:83 & 2:107. On June 1 Mancuso and Mohan spoke by telephone and settled plaintiffs' case for $225,000. *See id.* at 2:82-83. She or a paralegal inserted

- 12 -

this amount into the Baron & Budd computer. *Id.* at 2:101. Based on the Pittsburgh Corning settlement and all the other offers that had been made in the case, Mancuso believed the entire case had been settled. *Id.* at 2:107. When Tapscott was notified that Pittsburgh Corning had offered $225,000, he believed the lawsuit was completely settled. *Id.* at 2:170.

Under Baron & Budd policy, Mancuso was to reach a settlement and relay the information to the Case Manager, who in turn was to inform the client. *Id.* at 2:93, 2:98 & 2:100. She reached a settlement and relayed the information to Tapscott. *Id.* at 2:119 & 2:121. Based on her understanding at the time, she told Tapscott that Pittsburgh Corning had agreed to pay $225,000. *Id.* at 2:107. No one knew on June 1 that Pittsburgh Corning was going to pull the offer on June 2, 1999. *Id.* at 2:112.[6]

Tapscott does not know whether he was in Galveston for the June 1, 1999 trial setting and does not have a specific memory of being there. *Id.* at 2:135 & 2:139. He has no specific recollection because he traveled to Galveston more than 150 times during the last ten years at Baron & Budd. *Id.* at 2:135. Tapscott

---

[6]Mancuso testified that she did not believe that Tapscott lied when he told plaintiffs that the entire case had settled. Tr. 2:112. Although, as the court notes *supra* at note 4, plaintiffs generally acknowledged the credibility and reliability of Mancuso's testimony, they impeached this testimony on the basis that she did not have personal knowledge of what Tapscott said to plaintiffs. *Id.* Accordingly, the court has not accepted this evidence as uncontradicted and unimpeached and has not considered it in deciding defendants' motion.

has not reviewed PX 85, the Baron & Budd expense records for the
*Jacobs* Litigation, to determine whether there were expenses that
indicate he had gone to Galveston for trial on June 1 or sometime
immediately thereafter. *Id.* at 2:136-37. He has not looked at any
records to allow him to better determine whether he was there for
the trial setting. *Id.* at 2:137. Tapscott does not remember
specifically whether Nemeroff went to Galveston for the trial
setting. *Id.* at 2:139. He has no expense statement that shows he
went to Galveston. *Id.* at 2:140.

On June 2, 1999 Mancuso wrote Mohan a letter confirming the
settlements that had been reached in several cases. The letter
included a reference to the settlement for $225,000 of the *Jacobs*
Litigation. *Id.* at 2:77 & 85; PX 44. Mancuso thought the case had
settled, because she sent Mohan a letter attempting to confirm the
offer. *Id.* at 2:100. On that same day, however, probably during
the morning, Mohan called Mancuso and told her she was pulling the
settlement offer because the case had not been resolved as to all
defendants. *Id.* at 2:84-86 & 2:101. Pittsburgh Corning only
settled cases that were called to trial and that were resolved as
to all defendants, and plaintiffs' case had been continued. *Id.* at
2:84-86 & 2:108.[7]

_____

[7]The evidence is undisputed that the state court in Galveston
denied a motion for continuance in the *Jacobs* Litigation and that
the docket sheet does not reflect that the case was announced
settled. Tr. 2:84-85 & 113-15; DX20. The court has assumed in
deciding this motion that the jury could reasonably have found that

As soon as she found this out from Mohan, Mancuso relayed to Tapscott by telephone the fact that the offer had been pulled because the case had not been resolved as to all defendants. *Id.* at 2:101-02, 2:103 & 2:119. Tapscott does not remember receiving a call from Mancuso on June 2 or obtaining that information on that date, although he does not dispute Mancuso's testimony. *Id.* at 2:140-41 & 2:143.

On June 2 Tapscott called Karin and told her that Baron & Budd had won her lawsuit for $2.5 million, even more. *Id.* at 1:134.[8] He said the entire case had settled. *Id.* at 1:219 & 2:146. Tapscott did not mention Pittsburgh Corning when he spoke to her and did not tell her how much it had agreed to pay. *Id.* at 1:140-41, 1:147 & 2:147. He did not specifically say anything about Pittsburgh Corning's not agreeing to settle the case. *Id.* at 1:147. Karin was never told that the settlement was for anything other than cash. *Id.* at 1:144-45 & 1:191. After the call from

_____

a motion to continue the case was denied and that no announcement was made to the state court that the case had settled. Even so, this does not alter the court's decision.

    [8]Patria testified at one point that Tapscott spoke to her on June 1, 1999. Tr. 3:10. Although if true this evidence would defeat plaintiffs' claim that Tapscott deliberately lied——because Pittsburgh Corning did not pull the settlement until the following day——the court must draw all reasonable inferences in plaintiffs' favor and give credence to the evidence that favors plaintiffs. There is other evidence that Tapscott spoke to Karin and Patria on June 2, and Patria also testified that she did not know if Tapscott called Karin on June 1. *Id.* Accordingly, for purposes of this decision, the court assumes that June 2, 1999 is the date on which Tapscott spoke to Karin and Patria.

Tapscott, she did not hear from him again.  *Id.* at 1:135 & 1:160.
No one at Baron & Budd, including Tapscott, ever told Karin that
the sum of $225,000 was not agreed to and would not be paid before
the end of 1999.  *Id.* at 1:189.

Karin immediately called Patria to tell her she had just heard
from Tapscott, that the amount of the settlement was $2.5 million,
and that she thought it was great to find out that the case had
settled.  *Id.* at 1:134 & 2:225.  Patria testified that she did not
know the exact date when Tapscott called Karin, *id.* at 3:10-11, but
the call came sometime in early June, right around Memorial Day
weekend, on the same date that Patria called Tapscott back, *id.* at
2:225 & 3:10-11.  Because Patria did not believe Karin,[9] she asked
for Tapscott's cell phone number and spoke to him directly.  *Id.* at
2:225.  Tapscott told Patria the same thing he had relayed to
Karin: it was great news, the case had settled for $2.5 million,
but they would probably get more, and plaintiffs did not have to
come to Galveston for trial because all the companies had settled.
*Id.* at 2:225-26.  Tapscott did not discuss individual defendants
with her or tell her what Pittsburgh Corning had agreed to pay.
*Id.* at 2:226.

The Baron & Budd expense records for the *Jacobs* Litigation
show that Scott Morrison ("Morrison") flew to and from Houston on

---

[9]Patria did not suggest that she questioned Karin's
credibility.  She indicated that she wanted to get the information
about the settlement "straight from the horse's mouth."  Tr. 2:225.

June 7, 1999.  PX 85.  Morrison is a Case Manager who takes depositions.  Tr. 2:117.  The travel expense form reflects travel dates of June 6 and 7.  *Id.* at 2:118; PX 85.

JoeAnn wrote a letter to Tapscott dated June 14, 1999 that referred to the entire case's being settled.  Tr. 2:164; PX 47.  By that date it was clear to the clients that the case had been fully settled.  Tr. 2:164.  None of Tapscott's handwritten notes on the letter indicates that he had notified her that Pittsburgh Corning had not settled.  *Id.* at 2:165.

On August 2, 1999 the *Jacobs* Litigation was reset for trial in November 1999.  *Id.* at 2:123-24; DX20.  In connection with that setting, Mancuso and Mohan negotiated a settlement for $215,000.  *Id.* at 2:109 & 2:120.  The agreed judgment filed in January 2000 required that Pittsburgh Corning make the payment by August 2000.  *Id.* at 2:120.  Pittsburgh Corning filed for bankruptcy in April 2000, however, so plaintiffs did not recover the entire negotiated amount.  *Id.* at 1:180 & 2:109.

B

The court concludes that the evidence is legally insufficient for a reasonable jury to have found that Tapscott deliberately lied to plaintiffs and told them the entire *Jacobs* Litigation had settled, without telling them that Pittsburgh Corning had not settled.  The jury could reasonably have found that Mancuso and Mohan reached a settlement of plaintiffs' claims against Pittsburgh

Corning on June 1, 1999 for the sum of $225,000; that Tapscott did
not announce the settlement to the state court in Galveston; that
on June 1 the state court denied a motion to continue the trial of
the *Jacobs* Litigation; and that the entire case did not go to trial
at that time, causing Pittsburgh Corning to pull its settlement.
It could also have reasonably found that, without disclosing that
Pittsburgh Corning had not settled, Tapscott told Karin and Patria
on June 2, 1999 that plaintiffs had won their lawsuit for $2.5
million, even more, that the entire case had settled, and that they
did not need to come to Galveston, and that Tapscott was not in
Galveston when he communicated with Karin[10] and Patria.   The jury
could likewise have reasonably found that, probably during the
morning of June 2, 1999, and as soon as Mancuso learned from Mohan
that Pittsburgh Corning had pulled the settlement, Mancuso notified
Tapscott.   And it could reasonably have found that on June 6 and 7,
Baron & Budd attorney Morrison was working on the *Jacobs*
Litigation, and that in response to a June 14, 1999 letter from
JoeAnn, Tapscott failed to tell her that Pittsburgh Corning had not

---

[10]Karin testified that Tapscott called her from the steps of
the Galveston courthouse.   Tr. 1:134.   She did not state that
Tapscott told her he was on the courthouse steps at the time of the
call, or how she knew where he was.   Even if the evidence is
sufficient for the jury to have reasonably found that Tapscott
misrepresented to Karin that he was on the courthouse steps at the
time of the call, this is not the basis for plaintiffs' breach of
fiduciary duty claim, and it does not make legally sufficient the
evidence that the court holds is legally insufficient to support
the verdict.

settled.  But the evidence is legally insufficient for a reasonable jury to have found that *when Tapscott spoke to Karin and Patria*, he already knew that Pittsburgh Corning had pulled the settlement and therefore deliberately lied by telling them the entire case had settled, without disclosing that Pittsburgh Corning had not settled.

As noted *supra* at § I, defendants moved for judgment as a matter of law on the ground that the record lacked a scintilla of evidence that when Tapscott announced the settlement to plaintiffs, he actually knew that the settlement with Pittsburgh Corning had not occurred.  They maintained that the evidence was undisputed that Tapscott learned *after* he announced the settlement to plaintiffs that Pittsburgh Corning had pulled its offer or reneged on the settlement.  And they challenged whether the record contained some evidence that Tapscott had actual knowledge that Pittsburgh Corning had not settled when he told plaintiffs the entire case was settled.  In order for the jury to have reasonably found that when Tapscott spoke to Karin and Patria, he already knew that Pittsburgh Corning had pulled the settlement, there must have been sufficient evidence for the jury to have found that Tapscott told Karin and Patria of the settlement *after* the point in time on June 2, 1999 when Mancuso informed him that the settlement had been pulled.  But the trial record is devoid of substantial evidence that this occurred.

Mancuso and Tapscott both believed on June 1 that the entire case had settled.  Mohan pulled the Pittsburgh Corning settlement on June 2.  Mancuso thought it probable that she spoke to Mohan the morning of June 2 and that she called Tapscott as soon as she found out.  Mancuso also testified that she prepared PX 44——the letter to Mohan that confirmed several Pittsburgh Corning settlements, including the $225,000 settlement in the *Jacobs* Litigation——on June 2.  She had to have had time to arrive at her office and prepare and sign the letter before Mohan called her, because the letter assumed that the *Jacobs* Litigation had been settled.[11]  Neither Karin nor Patria testified regarding *when* on June 2 Tapscott spoke to them, except to say that Karin's call to Patria came immediately after Karin spoke to Tapscott, and that Patria called Tapscott the same day.  *See* Tr. 1:134 (Karin testified that she "immediately" called Patria after she spoke with Tapscott); *id.* at 2:225 (Patria testified that when Karin called her, she said she had "just heard" from Tapscott); and *id*. at 3:11 (Patria testified that the call from Karin came on the same day Patria called Tapscott).  Patria did not specifically testify, however, to facts that would support the reasonable inference that there was any significant time lapse

---

[11]Although the following observation has not affected the court's reasoning——i.e., the court has not weighed the evidence——it is possible that Mancuso prepared the letter herself.  There are no initials that indicate the letter was dictated to, or typed by, a secretary, and Mancuso's surname is misspelled in the signature block.

between her conversation with Karin and her call to Tapscott.  *See id.* at 2:225 & 3:11.  And there is no other evidence in the record that would have allowed the jury to find circumstantially that Tapscott already knew about the failed settlement when he talked to Karin and Patria.  The jury was left to speculate or engage in conjecture concerning when Tapscott spoke to Karin and Patria.  This is insufficient as a matter of law to support the verdict.

> Because of the requirement that the verdict be supported by *substantial* evidence, a verdict may not rest on speculation and conjecture. Similarly, the jury's freedom to draw inferences from the evidence does not extend so far as to allow a wholly unreasonable inference or one which amounts to mere speculation and conjecture.

*Nichols Constr. Corp. v. Cessna Aircraft Co.*, 808 F.2d 340, 346-47 (5th Cir. 1985) (emphasis in original) (footnotes, citations, and quotation marks omitted).[12]

Plaintiffs argue in their brief that Tapscott did not review

---

[12]As reflected in one of the questions that plaintiffs' counsel asked defendants' expert witness, plaintiffs recognized that the sequence of when Tapscott learned that the settlement had failed and of when he spoke to Karin and Patria was "very important."  Tr. 3:236.   Yet as revealed in another question that plaintiffs' counsel posed to the expert, the proof was insufficient to permit a reasonable jury to find that Tapscott spoke to Karin and Patria *after* he learned that the settlement had been pulled.

> All right.   Now, we also don't know, apart from what my clients said they thought the date was, *we don't actually know the date that Mr. Tapscott placed that call* from a place he couldn't recall where he was situated.

*Id.* at 3:224 (emphasis added).

the Baron & Budd case file and therefore could not identify any expense item that established "when he communicated with the Plaintiffs about the case." Ps. Br. 4. They assert that Tapscott was unable to testify about "the specific date(s) that he spoke with the Plaintiffs and informed them that their entire case had settled." *Id.* And they maintain that Tapscott and the Baron & Budd witnesses "had no specific recollection of or documents reflecting when the Plaintiffs[ ] were telephoned about the settlement of the entire case." *Id.* In closing argument, their counsel urged that defendants' witnesses had failed to use available opportunities to review the relevant documents to see whether they could "better clarify" when Tapscott "actually made the phone call, when he actually contacted Karin Jacobs or when he got the call from Patria Jacobs." Tr. 4:92. But this was not defendants' obligation. It was plaintiffs' burden to prove, at least by circumstantial evidence, that Tapscott spoke to them *after* Mancuso had already informed him that Pittsburgh Corning's attorney had pulled the settlement.

Plaintiffs also maintain that it is evidence of a deliberate lie that, on being informed by Mancuso that Pittsburgh Corning had not settled, Tapscott did not immediately correct what he may have believed to be a truthful statement when he told plaintiffs that the entire case had settled. First, this argument undercuts plaintiffs' theory that Tapscott already knew about the aborted

settlement when he spoke to Karin and Patria.  Second, this is a
concealment claim, which the court rejects for reasons explained
below.  The argument rests on the premise that, although Tapscott
may not have deliberately lied at the time he spoke to Karin and
Patria, he did so by concealing the fact that the settlement with
Pittsburgh Corning had fallen through.

Nor is Karin's testimony that Tapscott lied to her adequate to
provide legally sufficient evidence (although plaintiffs do not
rely on it in their brief).  Karin testified that when Tapscott
talked to her and told her the entire case had settled, he was not
truthful, she was deliberately lied to, and he (and her lawyers)
had lied.  Tr. 1:190, 1:214 & 1:219.  This evidence is legally
insufficient to support the verdict because Karin was not
testifying based on personal knowledge of what Tapscott knew at the
time he was speaking with her.  Her testimony that he lied was
based on information she said she learned after the fact, such as
in documents obtained later.  *Id.* at 1:190.  Her testimony that
Tapscott lied is insufficient of itself to support the verdict,
because it is not based on her personal knowledge of what Tapscott
knew when he spoke to her on June 2, 1999.[13]

The evidence that Baron & Budd attorney Morrison was in

_____

[13]Patria and JoeAnn also offered subjective testimony that they
believed Baron & Budd and Tapscott had lied.  *See, e.g.,* Tr. 3:5 &
3:39-40.  This evidence is legally insufficient for the same
reasons.

Houston on June 6 and 7, 1999, and that his expenses were charged to the *Jacobs* Litigation, would permit the jury to find that the entire case was not settled as of June 2 and that Morrison was working on the case after Tapscott informed plaintiffs that the entire case had settled.  But it would not permit the jury to have reasonably found that Tapscott knew *when he spoke to Karin and Patria* that the entire case had not settled.  Morrison's work on these dates is fully consistent with the premise that Tapscott informed Karin and Patria of the settlement sometime on June 2——but before Mancuso called him——and that work began anew on the case once it was learned that the Pittsburgh Corning settlement had been pulled.

     Nor is Tapscott's handwritten note on PX 47 sufficient evidence of a deliberate lie.  It is undisputed that JoeAnn wrote a letter dated June 14, 1999 to Tapscott that referred in the second paragraph to the entire case's being settled, and that Tapscott handwrote a response that addressed the time-frame when plaintiffs could anticipate receipt of payments.  Tr. 2:164; PX 47. Plaintiffs contend in their brief that Tapscott informed JoeAnn that the case had settled, without mentioning that Pittsburgh Corning had not settled.  During closing argument, plaintiffs' counsel asserted that, in Tapscott's handwritten response, he "affirmatively represent[ed] that the case was settled." Tr. 4:93. But Tapscott did not affirmatively represent in his handwritten

- 24 -

response that the entire case had settled.  He responded specifically to the fifth paragraph of JoeAnn's letter (concerning her stated understanding that the remaining settlement funds typically took 30-60 days to disburse), not to the second (in which JoeAnn thanked him for calling and telling her that all defendants had settled).[14]  And while Tapscott did not disclose that the entire case had not settled, or that the Pittsburgh Corning settlement had fallen through, as the court explains below at § IV, plaintiffs did not preserve a concealment claim for trial.

In their brief, plaintiffs also contend that a February 7, 2000 letter from Tapscott to Patria, DX 140, in which he enclosed Baron & Budd computer records that continued to show the case had settled on June 1, 1999, establish that Tapscott and Baron & Budd perpetrated a deliberate lie and/or omission.  The court holds that this evidence is insufficient, alone or in combination with other proof, to support the verdict.  First, this document was sent to Patria and the other plaintiffs well after the events of June 2, 1999.  Second, the fact that Baron & Budd's internal computer records continued to reflect a June 1, 1999 settlement date would merely tend to corroborate defendants' position that, on that date, Mancuso and Tapscott thought the entire case had settled, not that

---

[14]For the same reason, plaintiffs' similar assertion in their brief is misplaced.  *See* Ps. Br. 10 (asserting that "[Tapscott] wrote to Plaintiff JoeAnn on June 14, 1999 informing in his own handwriting that the case had settled without mention that [Pittsburgh Corning] had not settled . . . ." (footnote omitted)).

Tapscott deliberately lied to plaintiffs.  Third, as plaintiffs recognize, the computer records also reflected that the settlement was for $215,000.  Tr. 3:176; DX 140.  Other trial evidence established that Mancuso and Mohan negotiated a settlement for $215,000 in advance of the November 1999 trial setting.  Tr. at 2:108-09 & 3:176.  Therefore, the June 1, 1999 settlement date had no direct relationship to the amount of the settlement shown.  The jury could not have reasonably found that internal computer records, disclosed to plaintiffs eight months after Tapscott made the representations in question, that contained multiple errors, corroborated an intent by Tapscott to lie about the settlement reached on June 1, 1999 and abrogated the next day.  Nor can plaintiffs rely on these records as proof of an omission——i.e., a failure to correct a misrepresentation——because this is not a concealment case.

Accordingly, the court holds that the evidence adduced at trial, viewed under the controlling Rule 50(b) standard, is legally insufficient to support the verdict.

IV

Plaintiffs' second basis for establishing breach of fiduciary duty is that Tapscott deliberately lied to plaintiffs by telling them the entire case had settled and then concealing from them the fact that the Pittsburgh Corning settlement had been pulled, or failing to correct what he may have believed to be a truthful

statement when he told plaintiffs that the entire case had settled.

A

At trial, plaintiffs' counsel asserted during closing argument that Tapscott deliberately lied by not correcting something he had already told plaintiffs, Tr. 4:72; concealing the fact that the case had been reset to November, *id.* at 4:75-76; deliberately withholding information either by saying a deliberate lie or deliberately concealing the information, *id.* at 4:93; and deliberately leaving out the information Mancuso gave him when he communicated in writing with JoeAnn in response to her June 14, 1999 letter, *id.* at 4:93-94.  In their brief, plaintiffs argue that once the information that Tapscott conveyed to plaintiffs was determined to be wrong, he had a duty to correct it immediately. And during oral argument of defendants' motion, plaintiffs' counsel maintained that this is a concealment case.

B

The court holds that plaintiffs' second ground exceeds the scope of the claim that survived summary judgment.  Although plaintiffs' claim has a concealment component—that Tapscott did not tell plaintiffs that Pittsburgh Corning had not settled—it functioned as the predicate for the assertion that he had deliberately lied by telling them the entire *Jacobs* Litigation had settled.  In other words, the reason the statement that the entire *Jacobs* Litigation had settled was a deliberate lie was because

Pittsburgh Corning had not settled.  This is distinct, however, from a claim that Tapscott breached his fiduciary duty by *concealing* the truth from plaintiffs once he learned from Mancuso that Pittsburgh Corning had pulled the settlement.  And plaintiffs did not preserve a concealment claim for trial.

Defendants moved for summary judgment as to all of plaintiffs' claims.  The two breach of fiduciary duty claims that were tried to the jury were the ones that survived summary judgment.  In response to defendants' summary judgment motion, plaintiffs made the following pertinent assertion that the court in its opinion categorized as ground 7:

> The Defendants breached their fiduciary duty to the Plaintiffs by deliberately lying to them and informing them that the entire case had settled in Galveston County, Texas when in fact it had not entirely settled and failed to inform the Plaintiffs that Pittsburg[h] Corning Corporation had not settled.

Ps. July 31, 2006 Br. 20 (footnote omitted).  In support of this contention, plaintiffs cited three passages from Tapscott's deposition.  *Id.* at 20 n.38 (citing Ps. App. 57).  This testimony all pertained to Tapscott's recollection that he had told the state court that the entire case had settled, his belief at the time that the entire case had settled (and that he would not have made the report had it not), and that if he called plaintiffs to tell them the case had settled, he obtained his information from other Baron & Budd attorneys who had responsibility for settling with those

- 28 -

defendants.   Ps. App. 57.

Earlier in plaintiffs' brief, in the "Factual Background" portion, they made the following assertion that is related to this claim:

> Tapscott informed the Plaintiffs that their case had been settled as a result of the June 1, 1999 trial setting for $2,400,000.00 to $2,500,000.00 and perhaps more.   How much more, if any was not communicated to the Plaintiffs by the Defendants[.]   At the time settlement was announced to the Plaintiffs nothing was done by the Defendants to determine the financial condition of Pittsburgh Corning Corporation in June or November 1999 or whether any of the settling defendants needed a pay out arrangement or to obtain proof of funds.

Ps. July 31, 2006 Br. 10 (footnotes omitted).   In support of this assertion, plaintiffs cited three passages from Tapscott's deposition.   *Id.* at 10 nn. 21 & 22 (citing Ps. App. 56, 63 & 76). According to this testimony, Tapscott recalled telling Karin that the case was settled, that he could not specifically recall calling JoeAnn before June 14, 1999 to tell her the case had settled, or having a specific conversation with JoeAnn, and that he did not know Pittsburgh Corning's financial condition in June or November 1999.

It is therefore clear that plaintiffs' breach of fiduciary claim based on Tapscott's allegedly deliberate lie did not encompass the concealment claim on which they now rely to uphold the verdict.

C

Defendants preserved in the Joint Pretrial Order the contention that only two assertions for plaintiffs' breach of fiduciary duty claim survived summary judgment. *See* Jan. 31, 2007 Jt. Final Pre-Trial Order ¶ A(2). They contended, *inter alia*, that the claim at issue here was limited in scope as follows: "Tapscott deliberately lied to Plaintiffs in June 1999 about the entire Jacobs case settling and a settlement being reached with Pittsburgh Corning." *Id.* And they objected to any claims based on failure to communicate or inform, as opposed to deliberate lying. *Id.* Moreover, the claims that plaintiffs listed in the Joint Pretrial Order do not support the concealment claim that plaintiffs now assert. *See id.* at ¶ A(1)(j)-(s). And their statement of contested issues of fact plainly eliminates any concealment claim. *See id.* at ¶ C(2)-(3).[15]

"'Once the [pretrial] order is entered, it controls the scope

_____

[15]Plaintiffs' pertinent contested issues of fact state:

    2.    Did the Defendants misrepresent in June 1999 to Plaintiffs the extent of and amount of the settlement with each of the parties including Pittsburgh Corning Corporation?

    3.    Did the Defendants deliberately lie in June 1999 to Plaintiffs the extent of and amount of the settlement with each of the parties including Pittsburgh Corning Corporation?

Jan. 31, 2007 Jt. Final Pre-Trial Order ¶ C(2)-(3).

- 30 -

and course of the trial.'"  *Valley Ranch Dev. Co. v. Fed. Deposit Ins. Corp.*, 960 F.2d 550, 554 (5th Cir. 1992) (brackets in original) (citing Rule 16).  "If a claim or issue is omitted from the order, it is waived."  *Id.* (quoting (quoting *Flannery v. Carroll*, 676 F.2d 126, 129 (5th Cir. 1982)).  Under the Joint Pretrial Order, any concealment-based claim that plaintiffs seek to litigate is precluded.

D

Finally, the court at the pretrial conference and during the charge conference rejected plaintiffs' attempts to broaden the scope of this claim to include concealment.  Tr. 4:54-55. Plaintiffs objected during the pretrial conference and at the charge conference to the court's submitting to the jury only the question whether Tapscott deliberately lied.  *Id.* at 4:48.  They maintained that while Tapscott did deliberately lie, he also engaged in acts of concealment that constituted a breach of fiduciary duty.  *Id.* at 4:48-49.  The court held that its summary judgment ruling limited plaintiffs' claims to the ones they had raised in opposition to defendants' motion that presented genuine issues of material fact.  *Id.* at 4:54.  It reasoned that "of the two issues that were preserved that were successful in opposing summary judgment, one ground was the ground that Mr. Tapscott had deliberately lied to the plaintiffs, and it is in that sense that the case is limited to that particular inquiry."  *Id.* at 4:54-55.

The court concluded, as it does today, that the summary judgment "motion and the response ha[d] the legal effect of narrowing the allegations of the complaint." *Id.* at 4:55.

Accordingly, the court holds that plaintiffs are precluded from seeking to uphold the verdict based on a concealment claim that exceeds the scope of the one that survived summary judgment.

                              *     *     *

For the reasons stated, defendants' renewed motion for judgment as a matter of law is granted, and the court enters judgment dismissing plaintiffs' claim that defendants breached their fiduciary duty by deliberately lying to plaintiffs and informing them that the entire *Jacobs* Litigation had settled, without telling them that Pittsburgh Corning had not settled. Plaintiffs' March 20, 2007 motions for fee forfeiture and for judgment on the verdict are denied. This case is dismissed with prejudice by judgment filed today.

**SO ORDERED.**

April 12, 2007.


_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE


                              - 32 -